IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OTELLA SIMMONS, *et al.*, | ) |
| | ) CASE NO. 1:24 CV 1273 |
| Plaintiffs, | ) |
| | ) |
| v. | ) JUDGE DONALD C. NUGENT |
| | ) |
| THE OHIO CASUALTY INSURANCE | ) |
| COMPANY, *et al.*, | ) MEMORANDUM OPINION |
| | ) AND ORDER |
| Defendants. | ) |

This matter comes before the Court upon cross-motions for summary judgment from Plaintiffs, Otella Simmons and New Hope Investment Group, LLC, ("Simmons") and Defendant, The Ohio Casualty Insurance Company, *et al.* ("Ohio Casualty"). (ECF # #19, 20). The briefing was complete on March 21, 2025, and both parties had the opportunity for oral argument at a status conference on March 27, 2025. (ECF #30). The parties agree that there are no factual questions at issue with regard to coverage issues, and the Court should decide the case based on Ohio law, the agreed facts, and the language of the applicable contracts.

## FACTS

Plaintiff Otella Simmons is the sole member of New Hope Investment Group ("New Hope"). New Hope purchased a vacant house at 2252 East 83rd Street in Cleveland, for $61,750, with the intent of renovating the property. (ECF #20, Ex. A). To protect its investment, New Hope bought a commercial insurance policy from Defendant, The Ohio Casualty Insurance Company ("Ohio Casualty"), which provided coverage from January 27, 2023 through January 27, 2024. (ECF # 1-2, Page ID 21, 30). The policy's Schedule of Coverages states that it provides "Builders' Risk – Rehabilitation and Renovation" coverage[1] with a $170,000 "existing building limit"[2] and a $30,000 "building materials limit."[3] (ECF #1-2, PageID 33-35). During the course of renovations, New Hope paid $29,750 toward the improvement of the property.

The covered property was destroyed by fire on August 23, 2023. The City of Cleveland subsequently demolished the remains to clear the site. (ECF #19). The parties agree that the

---

[1] The policy was intended to cover the vacant property during renovations or rehabilitation. (ECF #1-2, PageID 48). It would have expired if renovations did not begin within 60 days, and would terminate no later than thirty days after the structure had been completed. (ECF #1-2, PageID 37). Coverage extended to "buildings or structures while in the course of rehabilitation or renovation...". (ECF #1-2, PageID 54).

[2] The policy defines "existing building" as a building or structure that was constructed and standing prior to the inception of this policy and that will undergo renovation or rehabilitation." (ECF #1-2, PageID 67). "Limit" is defined in multiple places within the policy. In one section it is described as: "the amount of coverage that applies." The same term is also described separately in the policy as "the most [Ohio Casualty will] pay in any one occurrence for loss to an 'existing building'" or to "building materials." (ECF #1-2, PageID 54).

[3] The policy defines "building materials" as: (a) additions, alterations, improvements, or repairs to an 'existing building," and (b) "materials supplies, attachments, and fixtures that will become a permanent part of an "existing building." (ECF #1-2, PageID 67).

building was a "total loss." Following an extensive investigation, Ohio Casualty agreed to pay the claim on May 22, 2024. They assessed the loss at a value of $95,000, and offered payment in that amount.

The Policy's Schedule of Coverages provides existing building coverage, and indicates that the parties chose to set the valuation for the "existing building" as the "actual cash value" rather than a "stated value." (ECF #1-2, PageID 36). The policy defines "actual cash value" as:

> the amount it would cost to repair or replace, on the date of the loss, with material of like kind and quality, with reasonable deduction for physical depreciation and obsolescence, but in no event more than the fair market value.

(ECF #1-2, PageID 46). It further provides that if, as in this case, "stated value" is not indicated on the "schedule of coverages," the value will not be the "limit" shown for the existing building on the schedule of coverages. Rather, the value will be "based on the actual cash value at the time of loss (with a deduction for depreciation). (ECF #1-2, PageID 63). Coverage for "building materials" is always valued at the "actual cash value at the time of loss (with a deduction for depreciation)," up to the policy limit. In the case of a loss, the policy provides that Ohio Casualty will pay "the lesser of: (a) the amount determined under valuation; (b) the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practicable; or (c) the "limit" that applies to the covered property."

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" only if its resolution will affect the outcome of

the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Insurance coverage questions are generally questions of law for the Court to decide. *See, Stafford v. Jewelers Mut. Ins. Co.*, 554 Fed. Appx 360, 373 (6th Cir. 2014). "[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined." *Sauer v. Crews*, 140 Ohio St.3d 314, 18 N.E.3d 410 (2014)(citations omitted). It is with these standards in mind that the instant Motions must be decided.

Both parties agree that there are no genuine issues of material fact, and that the Court may determine the applicable means of coverage based on the contract language of the respective insurance policies, and any applicable statutes.

## ANALYSIS

The parties do not dispute that the property was a total loss, and that Ohio Casualty is liable to pay for New Hope's losses under the policy. There is also no dispute that under the plain language of the policy, Ohio Casualty is only liable for the lesser of the policy limits or the actual cash value of the existing building and the building materials at the time of loss. Plaintiff does not dispute that the actual cash value of the lost property was $95,000.

The dispute arises over whether Ohio statutory law overrides the contract language and requires payment of the full policy limits whenever a property damaged by fire is a total loss. Ohio Revised Code, section 3929.25, entitled "Extent of liability under policy," provides as follows:

> A person, company, or association insuring any building or structure against loss or damage by fire or lightning shall have such building or structure examined by his or its agent, and a full description thereof made, and its insurable value fixed, by such agent. In the absence of any change increasing the risk without the consent of the insurers, and in the absence of intentional fraud on the part of the insured, in the case of total loss the whole amount mentioned in the policy or renewal, upon which the insurer received a premium, shall be paid. However, if the policy of insurance requires actual repair or replacement of the building or structure to be completed in order for the policyholder to be paid the cost of such repair or replacement, without deduction for depreciation or obsolescence, up to the limits of the policy, then the amount to be paid shall be as prescribed by the policy.

O.R.C. §3929.25.

In recognition of the existence of different statutes that may affect coverage in different jurisdictions, the policy itself provides that "[w]hen a condition of this coverage is in conflict with an applicable law, that condition is amended to confirm to that law." (ECF #1-2, PageID 65). The Court must, therefore, determine whether the terms of the policy conflict with this particular Ohio law.

Ohio Casualty is a company insuring the "existing building" against loss for fire. There has been no evidence presented to show whether an Ohio Casualty agent examined the building and fixed its value in accordance with the statute. However, had they done so, the value at the time the policy was signed would have been significantly less than the $170,000 limit. At the time the policy was purchased the property's fair market value would have been what Plaintiff

paid for it, which was just over $61,000. Because the insurance was set up as a Builder's Risk policy, it was not meant to insure a set value calculated at the inception of the coverage. The purpose of builder's risk insurance is to provide fluid coverage that accounts for the changing value of the property over the course of its renovation. Coverage is provided with the understanding that, as improvements are made, the actual cash value of that property is expected to increase, and the insurance coverage should increase along with it.

The Ohio statute states that in the case of total loss the "whole amount mentioned in the policy or renewal, upon which the insurer received a premium, shall be paid." (ECF #1-2). New Hope's property did qualify as a total loss, however, it is not clear what the statute means by the "whole amount mentioned in the policy." Although there is a specific amount mentioned as the limit or cap on the amount that can be paid out over a single occurrence, that is not the only value mentioned in the policy. The policy also provides that the amount to be covered in case of a loss to the existing building is the actual value of the property at the time of the loss. The parties specifically agreed not to provide a single pre-determined value for the existing building because that value was expected to increase over time.

The intent of the statute is prevent the insurance company from charging a premium based on an overstatement of the property's value, such that it collects higher premiums but will never actually liable for the full coverage limits. In this case, however, neither side has provided any evidence as as to whether the premium paid was based on a value of $170,000 throughout the entire policy term, or if it was based on the actual cash value at the time of purchase, with the understanding that the value would increase over time. Generally builder's risk policies are understood to be progressive policies where the value of the property increases over time, and the

premiums charged should take this variability of value into account.

Ohio's 12th District Court of Appeals has also held that the third sentence in the most recent version of O.R.C. §3929.25 "operates as a limitation upon the obligation of the insurer to pay the full face value of the policy where there is a total loss but the insured elects not to repair or replace the destroyed structure." *Vires v. Grange Mut. Cas. Co.*, 2011 Ohio App. LEXIS 220, at *10 (12th App. Dist. , January 24, 2011). This construction acknowledges the legislature's intent to balance the protections afforded to both the insured and the insurer by "preventing insurance companies from over-insuring property, collecting inflated premiums, and then underpaying proceeds," while simultaneously "preventing the insured from over-insuring property, failing to protect or maintain the property, and then collecting insurance proceeds on a dilapidated or ruined structure." *Id.* At *10-11. In essence, this section allows insurers to restrict full limit pay-outs to situations where an insured chooses to repair or replace the covered building. Although the policy at issue does not specifically require actual repair or replacement of the covered building in order to receive the cost of repair or replacement, it does create a similar restriction on the insurer's liability for limit coverage when the insured does not chose to replace or repair the existing building. The Court need not determine whether a total limit pay out would be required under the statute had the insured been in a position to repair or rebuild the building because the City of Cleveland demolished the property and there is no indication in the record that the insured made a request to rebuild.

Taking into account the unambiguous language of the policy; the fact that the statute, as written, recognizes an exception to full coverage in the case of total loss; and, the unique factual circumstances of this case, the Court finds that O.R.C. §3929.25 does not apply to require full


"limits" coverage in this particular case. This conclusion is bolstered by opinions from other jurisdictions that recognize that Builder's Risk policies, along with other Progressive policies are "categorically different from the fixed value on fire coverage contemplated by [ ] valued policy law." *St. Paul Fire & Marine Ins. Co. v. Griffin Const. Co.*, 993 S.W.2d 485, 489 (Ark. 1999); *see also, Jones v. State Farm Fire & Cas. Co.*, 740 S.W.2d 708 (Mo. Ct. App. 1987); *White v. New Hampshire Ins. Co.*, 390 N.W.2d 313 (Minn. Ct. App. 1986). They are not intended to provide full limit coverage throughout the entire duration of the policy period, as the policy in this case clearly states. Ohio requires courts to "honor the coverage the parties did – and did not – provide for in their written contracts of insurance." *Santo's Italian Café v. Acuity Ins. Co.*, 15 F.4th 398, 407 (6th Cir. 2021).

Ohio has consistently held that the purpose of construing statutes is to "ascertain and give effect to the legislative intent." *Sarmiento v. Grange Mut. Cas. Co.*, 106 Ohio St.3d 403, 835 N.E. 2d 692, ¶25. "It is the cardinal rule of statutory construction that a statute should not be interpreted to yield an absurd result." *Mishr v. Bd. of Zoning Appeals*, 76 Ohio St. 3d 238, 240, 667 N.E. 2d 365(1996). The valued policy insurance statute only make sense and can only advance the public policies it seeks to address, if it applies to fixed value coverage. Applying it to Builder's Risk or other progressive or open policies creates an absurdity because it contradicts the parties' intentions (as expressed in the contract language) and does not account for the expected changes to the property's value over the course of the policy period.

Plaintiffs concede that if O.R.C. §3929.25 does not apply, "then Ohio Casualty wins and pays nothing [further]." (ECF #25, PageID 656). Ohio Casualty has already paid Plaintiffs $95,000, and provided the basis for their valuation. Plaintiffs have conceded that this amount is

correct if coverage is based on the actual value of the property at the time of the loss. Therefore, no further payment is required, and there is no basis for a finding of bad faith.

## CONCLUSION

For the reasons set forth above, the Court finds that O.R.C. §3929.25 does not mandate full limit coverage under the circumstances presented in this case, and the Court finds in favor of the Defendant on each of Plaintiffs' three causes of action. Therefore, Plaintiffs' Motion for Summary Judgement is DENIED (ECF #19), and Defendant's Motion for Summary Judgment is GRANTED (ECF #20). IT IS SO ORDERED.

DATED: April 10, 2025

DONALD C. NUGENT
United States District Judge